HOME INSURANCE COMPANY *v.* MATHIS.

[No. 16,349. Filed March 4, 1941.]

*Slaymaker, Merrell & Locke* and *Lawrence B. Moore,* all of Indianapolis; *Frank S. Houston,* of Salem; and *Bulleit & Orbison,* of New Albany, for appellant.

*L. A. Douglass,* of Jeffersonville; and *Lorch & Lorch,* of New Albany, for appellee.

CURTIS, C. J.—The appellee, Henry F. Mathis, as sole plaintiff, by his amended complaint against the appellant and Commercial Credit Company, sought to recover from the appellant, upon a policy of theft insurance executed by the appellant to the appellee and Commercial Credit Company for loss and damage to an automobile in connection with an alleged theft thereof.

The appellee, by leave of court, filed an amended complaint and made the Commercial Credit Company a party defendant. It filed a disclaimer. The appellant filed a motion to make the amended complaint more specific, which motion was overruled; whereupon it demurred unsuccessfully to the amended complaint for want of sufficient facts. The appellant then filed an answer in

general denial and three paragraphs of special answer relying upon the exceptions in the policy hereafter set out as a defense to the action. The appellee replied to the appellant's second, third and fourth paragraphs of answer by a general denial. The plaintiff, appellee, then dismissed his cause of action as to the Commercial Credit Company.

The cause was tried before a jury, resulting in a verdict for the appellee in the sum of $425.00 and costs. The appellant thereupon filed its motion for a new trial, which the court overruled and judgment was then entered in accordance with the verdict. From that judgment this appeal has been prosecuted. The error relied upon for reversal is the ruling on the motion for a new trial. Under the motion for a new trial, the appellant relies upon the causes or grounds of the motion that the verdict of the jury is not sustained by sufficient evidence; is contrary to law; alleged error in the giving of each of certain specified instructions to the jury; and claimed error in certain designated rulings in the admission of evidence.

A fair summary of the evidence shows that at about 7 p. m. on April 25, 1935, the appellee left his automobile at the Ohio Auto Park, a public parking lot, in Indianapolis, stating to Virgil Anderson, the employee of the parking lot owner, then on duty, that he would be gone about a week and wished to store his car there in his absence, and paid a week's storage in advance; that around 11:30 p. m. the same evening, after all the cars which were to be called for that evening had been checked out, said Virgil Anderson drove appellee's car to his brother's home on the south side of Indianapolis, some four or five miles south of the parking lot, to get some socks and underwear which his brother, who worked at Real Silk Hosiery Mills, had earlier in the

same week promised to get for him from the Real Silk Hosiery Mills at a discount granted to employees; that after calling at his brother's home, he started driving back to the parking lot with appellee's car; and at Troy and Madison avenues, when at a point about three miles south of the parking lot, in attempting to drive around a partial barricade in the street, he collided with a telephone pole, thereby damaging appellee's car; that Anderson was slightly injured by the collision, but stopped a passing motorist who drove him first to a nearby tavern where he called the sheriff of Marion County and reported to the sheriff the accident. He then proceeded to his brother's home and asked him to return with him to the scene of the accident, which the brother and his wife did, arriving there before the deputy sheriff arrived. When the deputy sheriff arrived, Anderson made himself known and told him what had occurred; and was then taken in custody by the deputy. There was no direct evidence of an attempt at flight by Anderson after the accident; the evidence showed that Anderson had no luggage with him in the car and was dressed in his working clothes; that he had not been paid his weekly wages which were due him the following day; and that all his belongings were at his room located on the north side of Indianapolis and north of the parking lot. He denied any intention whatever to steal the car.

There was no evidence introduced to show that Anderson took the car or used it for any other purpose than to drive to his brother's home upon a personal errand and to return it to the parking lot; and no evidence raising any legitimate inference that Anderson, at any time, intended to steal the appellee's automobile.

A copy of the insurance policy relied upon was filed with the amended complaint as Exhibit A and made a

part thereof. The policy had a theft coverage from which we quote as follows:

"THEFT, ROBBERY AND PILFERAGE, excepting . . . by the agent of any firm' or corporation to which person, firm or corporation the Assured, or any one acting under express or implied authority of the Assured, voluntarily parts with title and/or possession whether or not induced so to do by any fraudulent scheme, trick, device or false pretense."

"This policy does not insure against the wrongful conversion, embezzlement or secretion by the mortgagor, vendee, lessee or other person in lawful possession of the insured property under a mortgage, conditional sale, lease or other contract or agreement, whether written or verbal."

In the case of *Michigan etc. Ins. Co.* v. *Wills* (1914), 57 Ind. App. 256, 258, 106 N. E. 725, this court reversed a judgment for the plaintiff where it was sought to recover upon a similar policy of theft insurance where the plaintiff's automobile was taken out of a garage, where it was stored, by some boys for a joy ride without the plaintiff's consent or permission, and driven from Logansport to Peru, and at a point about six miles west of Peru was driven into a fence, wrecked and then abandoned. This court there said:

" 'Under this contract, if the thief carries away a machine with intent to steal it, and it is never recovered, and loss occurs, the owner may recover the full value of the automobile. If the thief be apprehended and the machine recovered, then the owner is entitled to recover for whatever damage has been done the machine if it exceeds $25.00. But in both cases it must appear that the person taking the machine intended to steal it. If he had the animus revertendi, he is not guilty of theft, or robbery, or pilferage, even though he took the machine without the owner's consent.' Such holding is fully supported by the decisions of our Supreme Court. *Malone* v. *State* (1907), 169 Ind. 72, 81 N. E. 1099; *Stilwell* v.

*State* (1900), 155 Ind. 552, 58 N. E. 709; *Robinson* v. *State* (1888), 113 Ind. 510, 16 N. E. 184; *Umphrey* v. *State* (1878), 63 Ind. 223; *Starck* v. *State* (1878), 63 Ind. 285, 30 Am. Rep. 214. See, also, *People* v. *Brown* (1894), 105 Cal. 66, 38 Pac. 518. "The facts in this case as in the case quoted from are sufficient to rebut any inferred intent that might be included in the unlawful taking."

The great weight of authority is in line with the Wills case, *supra.* For cases in point and closely paralleling the facts of the instant case see: *Hartford Fire Ins. Co.* v. *Wimbish* (1913), 12 Ga. App. 712, 78 S. E. 265. The court there said, "It is argued that the word 'theft,' as used in this policy, means any unlawful taking; that is to say, a taking without the consent of the owner. But in our law the word 'theft' has a well defined meaning. Theft is synonymous with larceny. It is merely a popular name for larceny. . . . And we know of no authority for giving any different meaning to these words (theft, robbery or pilferage) (our parenthesis) in a contract of insurance where it is stipulated that the company will be liable for loss or damages to an automobile, resulting from theft, robbery, or pilferage. Under this contract, if the thief carries away a machine with intent to steal it, and it is never recovered and loss occurs, the owner may recover the full value of the automobile. If the thief be apprehended and the machine recovered, then the owner is entitled to recover for whatever damage has been done the machine, if it exceeds $25.00. But in both cases it must appear that the person taking the machine intended to steal it. If he had the *animo revertendi*, he is not guilty of theft, or robbery, or pilferage, even though he took the machine without the owner's consent."

The supreme court of Montana in the case of *Valley Mer. Co.* v. *St. Paul etc. Ins. Co.* (1914), 49 Mont. 430,

143 P. 559, in passing upon facts similar to the instant case, said: "The fact that the taking was altogether wrongful, and that it was the intention of Le Vasseur and Ellis to appropriate the car to their own use during the ride, and to the extent to deprive the owners of the use of their property, are not sufficient to constitute their acts larceny. They must have had a criminal intent—the intention to steal the car, without which the act of taking, however reprehensible and wrongful, amounted only to a trespass or a civil wrong."

In *Stuht* v. *Maryland Motor Car Ins. Co.* (1916), 90 Wash. 576, 579, 156 P. 557, the Supreme Court of Washington, in the course of its opinion in a like case, said: "We are satisfied from the whole record, and from the statement of the appellants, as copied above, that there was no criminal intent, and that there can be no recovery under the policy, even though Mr. Richardson took the automobile under such circumstances without the consent of the owner."

The New York Court of Appeals, in *Van Vechten* v. *American E. F. Ins. Co.* (1925), 239 N. Y. 303, 146 N. E. 432, in a case involving facts almost identical with the facts in the case at bar, after referring to the automobile taking statute of that state and pointing out its inapplicability, said: "Apart from this statute, the misuse of plaintiff's car by the proprietor of the garage would not constitute a larceny, since there was lacking the felonious intent to appropriate another's property permanently and wholly."

See also: *Ledvinka* v. *Home Ins. Co.* (1921), 139 Md. 434, 115 A. 596; *LaMotte* v. *Retail Hardware Mutual Fire Ins. Co.* (1930), 203 Wis. 41, 233 N. W. 566; *Seither, Jr.* v. *Pa. Mfg. A. C. Ins. Co.* (1931), 104 Pa. S. 260, 159 A. 53; *The Morris Plan* v. *Firemen's Fund Ins. Co.* (1928), 49 R. I. 159, 141 A. 182; *Kovero*

v. *Hudson Insurance Co.* (1934), 192 Minn. 10, 255 N. W. 93.

Keeping in mind the law as above laid down, we proceed to an examination of the questions presented by the ruling on the motion for a new trial. At ■ the outset the appellee contends that the instructions are not properly in the record for the reason that they are not signed by the trial judge in compliance with some of the statutory requirements where instructions are made a part of the record under those statutory methods. The appellee, however, overlooks the fact that in the instant case the instructions were made a part of the record by a bill of exceptions. The statutes relied upon by the appellee have no application where the instructions are brought into the record by a bill of exceptions. Under the statutory methods of bringing instructions into the record, the signing of the instructions is designed to make identification sure. But there is no way of establishing verity which is superior to a bill of exceptions. The instructions are properly in the record. See: *Thompson* v. *Miller* (1914), 182 Ind. 545, 107 N. E. 74; *Ward Brothers Co., Inc.* v. *Zimmerman, Admx.* (1929), 89 Ind. App. 353, 166 N. E. 545.

In view of the conclusion we have reached that the judgment must certainly be reversed for error in the instructions, we now take up instruction number ■ 5 given by the court upon the request of the appellee. The instruction is as follows:

"The court instructs you that you have the right under all the evidence before you in this case, to find whether Virgil Anderson was in possession of plaintiff's car, as herein defined and instructed you, or whether it was in his custody only as the mere custodian of the car and, if you do find that it was in his custody merely and not in his legal possession and, if while in his said custody he, without

the knowledge or consent of plaintiff, took it out of the Auto Park and converted it to his own use, he was guilty of the theft of the car, and if, while out with the car and while converted to his own use, it was wrecked and, if you further find that the risk of its being wrecked and it being wrecked, was one of the risks of the theft your verdict should be for the plaintiff."

The above instruction was erroneous, misleading to the jury, and harmful to the appellant. In the first place it is mandatory in form and omits many of the elements necessary to a recovery by the appellee and ignores the issues and defenses based upon the exceptions in the policy pleaded and relied upon by the appellant. It is an erroneous statement of the law applicable to the evidence under the issues as measured by the cases heretofore cited. See: *Indianapolis Traction, etc., Co.* v. *Mathews* (1912), 177 Ind. 88, 97 N, E. 320; *Burroughs* v. *Southern Colonization Co.* (1933), 96 Ind. App. 93, 173 N. E. 716; *Indiana Service Corp.* v. *Schaefer* (1936), 101 Ind. App. 294, 199 N. E. 158. Where, as in the instant case, the controlling evidence is undisputed and leads to but one conclusion, the mere guess or conjecture of the jury in reaching an opposite conclusion cannot be allowed to stand. To do so would permit the jury without legal right to reward one litigant at the expense of the other. A verdict' must be sustained by more than mere guess, conjecture, or prejudice which usually results when it is adversely affected by an erroneous or injurious instruction or instructions. A felonious intent to steal may, in some instances, be inferred from the circumstances; but in the instant case there is no legitimate basis for such an inference.

Several of the other instructions are subject to the same infirmity as is pointed out in said instruction number 5. We do not feel that it is necessary to dis-

cuss each one of them separately. Such instructions cannot usually be cured by other instructions. See the cases above cited.

Attention is also called to instruction number 10 given by the court at the appellee's request. It is as follows:

> "It is also the law that, whoever feloniously steals, takes and carries, leads or drives away, the personal goods of another, of the value of $25.00 or upwards is guilty of grand larceny, and, on conviction, shall be punished by imprisonment in the state prison for not less than one year nor more than ten years and disfranchised."

This instruction is in the field of instructions that are usually held to be erroneous and frequently held to require a reversal. Attention is called to it so that in any retrial of the case the danger can be avoided. See: *Illinois Bell Telephone Co.* v. *Pappadikis* (1939), 106 Ind. App. 504, 17 N. E. (2d) 494, and cases cited therein. Such an instruction may well be calculated to lead to a verdict not sustained by sufficient evidence or one that is contrary to law.

For the errors pointed out the judgment is reversed with instructions to sustain the motion for a new trial.

NOTE.—Reported in 32 N. E. (2d) 108.